IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIAN ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-611-SLR |
| | ) | |
| THE MARIST BROTHERS OF THE | ) | |
| SCHOOLS, INC., THE ARCHDIOCESE | ) | |
| OF NEW YORK, CHURCH OF THE | ) | |
| NATIVITY OF OUR BLESSED LADY, | ) | |
| MT. ST. MICHAEL'S SCHOOL and | ) | |
| BROTHER DAMIAN GALLIGAN, | ) | |
| | ) | |
| Defendants. | ) | |

Robert Jacobs, Esquire, Thomas C. Crumplar, Esquire, and Jordan J. Ponzo, Esquire, Jacobs & Crumplar, P.A.; Thomas S. Neuberger, Esquire, Stephen J. Neuberger, Esquire, and Raeann Warner, Esquire, The Neuberger Firm, P.A.: Counsel for plaintiff Brian Elliott.

Anthony G. Flynn, Esquire, Nelli Mullen Walsh, Esquire, Mary F. Dugan, Esquire, and Erika R. Caesar, Esquire, Young Conaway Stargatt & Taylor, LLP: Counsel for defendants Archdiocese of New York and Church of the Nativity of Our Blessed Lady.

**MEMORANDUM OPINION**

Dated:  December 21, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Brian Elliott brought this suit in the Superior Court of the State of Delaware against the Marist Brothers of the Schools Inc. ("Marist"), the Archdiocese of New York ("the Archdiocese"), Church of the Nativity of Our Blessed Lady ("Church of the Nativity"), Mount Saint Michael's School ("Mount Saint Michael's"), and Brother Damian Galligan ("Galligan") (collectively "defendants"), seeking monetary damages for personal injuries arising from childhood sexual abuse by Galligan. (D.I. 1, ex. A at ¶ 1, the amended complaint, hereafter "AC") On August 17, 2009, the Archdiocese and Church of the Nativity (collectively, "moving defendants") removed the action to this court. (D.I. 1)

Moving defendants now request dismissal of the complaint, principally arguing that the court: (1) lacks personal jurisdiction over the moving defendants because they have insufficient contacts with Delaware and the plaintiff has failed to allege that any purported actions of the moving defendants were purposefully directed towards Delaware; and (2) should apply New York law to the dispute and, thus, dismiss the suit because the claims are barred by the applicable statute of limitations. (D.I. 10)

## II. FACTS

### A. The Parties

Plaintiff is currently a resident of the State of New Jersey. (D.I. 1 at ¶ 6) He is forty years old and, at the time of the alleged sexual abuse, he ranged from ages eight to thirteen. (AC at ¶ 2)

The Archdiocese is incorporated in the State of New York with its principal place of business in New York City, New York. (D.I. 11, ex. A)  The Archdiocese is a Roman Catholic religious enterprise and governing organization of the Catholic Church. (AC at ¶ 9; D.I. 11, ex. A at ¶ 1)  Church of the Nativity is incorporated in the State of New York with its principal place of business in New York City, New York. (D.I. 11, ex. B)  Church of the Nativity is a private religious organization operating a church under the Archdiocese. (AC at ¶ 10; D.I. 11, ex. B)  Marist is incorporated in the State of New York and is a religious order of brothers. (AC at ¶ 3; D.I. 5 at ¶ 3)  Marist was responsible for hiring and supervising Galligan as its employee and agent. (AC at ¶ 4)  Marist served mass at the Church of the Nativity, a parish under the Archdiocese. (*Id.* at ¶ 28)  Mount Saint Michael's is incorporated in the State of New York as a private religious high school and is located in New York City, New York. (AC at ¶ 5; D.I. 5 at ¶ 5)  Galligan was a brother of the Marist Order and employed by the Archdiocese and Marist. (AC at ¶ 11; D.I. 5 at ¶ 11)  Galligan also taught at Mount Saint Michael's and served as a brother of the Church of the Nativity. (AC at ¶ 11)

**B. Alleged Acts of Abuse**

Plaintiff's grandmother was a parishioner at the Church of the Nativity. (*Id.* at ¶ 29)  Plaintiff's grandmother introduced plaintiff to Galligan. (*Id.*)  Galligan developed a close relationship with plaintiff, which plaintiff's family encouraged because of Galligan's status as an authority figure and holy man. (*Id.* at ¶ 30)

Beginning in the fall of 1977, when plaintiff was eight years old, Galligan allegedly began to sexually assault, abuse, rape and/or molest plaintiff. (*Id.* at ¶ 32)  These acts

of sexual abuse and assault allegedly occurred on a regular basis between 1977 and 1983 in various locations in New York, New Jersey and Delaware.  (*Id.* at ¶ 33)

## C.  Alleged Acts of Abuse in Delaware

During approximately the summer of 1979, Galligan took plaintiff on an overnight trip to Rehoboth, Delaware.  (*Id.* at ¶ 34)  During this trip, plaintiff asserts that he was sexually assaulted, abused, raped and/or molested by Galligan.  (*Id.*)  While returning to New Jersey from Delaware, plaintiff was again sexually assaulted, abused, raped and/or molested by Galligan at a Delaware rest stop.  (*Id.* at ¶ 36)  This trip is alleged to have been part of Galligan's brotherly duties and with the knowledge and authority of moving defendants.  (*Id.* at ¶ 34)

Plaintiff again accompanied Galligan on a trip to visit Galligan's brother in Virginia during the summer of 1981.  (*Id.* at ¶ 37)  On the way to Virginia, Galligan stopped at the same rest stop in Delaware that he visited in 1979 and allegedly sexually assaulted, abused, raped and/or molested plaintiff.  (*Id.*)  While returning from Virginia, Galligan again stopped at the same Delaware rest stop and allegedly sexually assaulted, abused, raped and/or molested plaintiff.  (*Id.* at ¶ 38)  It is asserted that this trip occurred as a result of Galligan's position with the moving defendants and the authority given to him by the moving defendants.  (*Id.* at ¶ 37)

## D.  Moving Defendants' Relationships to Acts of Abuse

Plaintiff alleges an agency relationship between Galligan and moving defendants. (*Id.* at ¶ 53)  It is asserted that Galligan was employed by moving defendants at all relevant times to perform brotherly functions in homes, hospitals, parishes, schools and churches, and moving defendants were responsible for supervising him.  (*Id.* at ¶¶ 51-

52) As a result of this relationship, it is asserted that Galligan was given the power to act on moving defendants' behalf and all acts done outside the scope of that consent were ratified, affirmed, adopted, acquiesced in, and not repudiated by moving defendants, and such acts were enabled by the agency relationship. (*Id.* at ¶¶ 54-55)

Plaintiff alleges that moving defendants had actual or constructive knowledge of the childhood sexual abuse committed upon plaintiff by Galligan. (*Id.* at ¶¶ 14, 56) Further, plaintiff alleges that Galligan's misconduct was authorized, sanctioned, ratified, acquiesced in or approved by moving defendants, and that all of his acts were taken within the scope of his authority and for the benefit of moving defendants during the normal course of his routine and regular job duties. (*Id.* at ¶¶ 15, 55-57) Plaintiff alleges that moving defendants have been aware of sexual abuse committed by priests for several years and that a policy of covering up acts of sexual abuse, and handling reports of sexual abuse with secrecy, put moving defendants on notice of the threat of injury to children from clergy such as Galligan. (*Id.* at ¶¶ 17-26)

As a result of the alleged agency relationship between moving defendants and Galligan, and the general knowledge of moving defendants concerning Galligan's acts, plaintiff asserts that moving defendants had a duty to prevent Galligan from committing acts of sexual abuse on plaintiff. (*Id.* at ¶¶ 58-60) Plaintiff also asserts that, given the high degree of vulnerability and risk of sexual abuse inherent in the special relationship between plaintiff and moving defendants, moving defendants had a duty to establish rigorous measures of protection against the sexual abuse of children. (*Id.* at ¶ 59) Plaintiff asserts that these duties were breached by moving defendants because they: (1) failed to warn parishioners, including plaintiff's parents, about the dangers posed by

Galligan; (2) failed to use reasonable care to supervise and protect children under their care and supervise Galligan; and (3) failed to warn or disclose Galligan's acts of abuse to public authorities or the community by engaging in a cover-up of the alleged acts of abuse. (*Id.* at ¶¶ 61-70) In addition, plaintiff alleges that moving defendants had a fiduciary duty to plaintiff and plaintiff's parents that was formed by the trust that plaintiff, and his parents, placed in the faithful integrity of moving defendants and their agents as religious authorities and leaders, and the entrusting of plaintiff to moving defendants' care. (*Id.* at ¶¶ 71-74)

Plaintiff asserts that the actions of moving defendants in breaching these duties caused plaintiff injuries including: depression, sexual dysfunction, guilt, emotional pain, fear, fright, shame, anxiety, humiliation, anger, loss of enjoyment of life, lack of self-confidence, insomnia, embarrassment, substance abuse, economic losses, and other temporary or permanent personal injury. (*Id.* at ¶¶ 77-82) Plaintiff contends that these injuries were inherently unknowable and he did not become aware of them until November of 2007. (*Id.* at ¶¶ 84, 88)

### E. Disputed Facts

Moving defendants assert that Galligan was an agent of Marist and Mount Saint Michael's since they were responsible for hiring and supervising him, and that Galligan was not an agent of moving defendants. (D.I. 11 at 5) Moving defendants also assert that, even assuming Galligan was an employee of moving defendants, any acts of sexual abuse by Galligan were outside the scope of his employment and were not approved by moving defendants. (*Id.* at 5-6; AC at ¶¶ 4, 6)

## III. STANDARDS OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(2), the court must accept all of a plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). A plaintiff, however, still bears "the burden of demonstrating the facts that establish personal jurisdiction."[1] *Id.* (citing *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to a plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (alteration in original) (citation omitted).

_____

[1] "[C]ourts are to assist the plaintiff [in meeting his burden] by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*. at 545.

## IV. ANALYSIS

### A. Personal Jurisdiction

To establish personal jurisdiction, plaintiff must show, by a preponderance of the evidence, that (1) "there is a statutory basis for jurisdiction under the forum state's long-arm statute" and (2) "the exercise of jurisdiction comports with the defendant's right to due process." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 590 (D. Del. 2008) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984); *Reach & Assocs. P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003)). Delaware state courts interpret Delaware's long-arm statute as "confer[ring] jurisdiction to the maximum extent possible under the Due Process Clause."[2] *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992); *LaNuova D & B S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (D. Del. 1986); *see also Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997, *aff'd*, 707 A.2d 765 (Del. 1998). However, the jurisdictional analysis "must not be collapsed into a single constitutional inquiry." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 370 n.3 (D. Del. 2008). Accordingly, personal jurisdiction over a defendant is only

---

[2]The court applies the Delaware long-arm statute consistent with Delaware state courts' interpretations. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

proper if it meets the requirements of Delaware's long-arm statute and, separately,

comports with due process.

Pursuant to Delaware's long-arm statute, a court may exercise personal

jurisdiction over a defendant where the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;[3]

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).  Subsections (c)(1), (c)(2), (c)(3), (c)(5), and (c)(6) of the long-arm

statute require a showing of specific jurisdiction.  *See Shoemaker v. McConnell*, 556 F.

Supp. 2d 351, 354-55 (D. Del. 2008); *G & G LLC v. White*, 535 F. Supp. 2d 452, 461 (D.

Del. 2008); *Dencer*, 269 F. Supp. 2d at 503-05.  In contrast, subsection (c)(4) of the

long-arm statute requires a showing of general jurisdiction, that is, a showing that

defendant or its agent, through more than minimum contacts, is "generally present" in

_____

[3]The long-arm statute lists the subsection (c)(4) activities in the disjunctive, and the defendant need only engage in one for that subsection to apply. *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 374 (D. Del. 2008) (citing *LaNuova*, 513 A.2d at 769).

8

the forum state.  *See G & G LLC v. White*, 535 F. Supp. 2d at 461; *Shoemaker*, 556 F. Supp. 2d at 355.

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process.  *Shoemaker*, 556 F. Supp. 2d at 354.  The exercise of personal jurisdiction comports with due process where "the defendant's conduct is such that it should 'reasonably anticipate being haled into court there.'"  *L'Athene*, 570 F. Supp. 2d at 591 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Personal jurisdiction may be either specific or general.  *Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, 1993 WL 14647, at *2 (D. Del. Jan.14, 1993).  For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state.  *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Woodson*, 444 U.S. at 297).  For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to the defendant's activities in the forum state so long as the defendant has "continuous and systematic contacts with the forum state."  *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991); *Vikoma*, 1993 WL 14647, at *2.

Pursuant to 10 Del. C. § 3104(c)(3), plaintiff must assert facts sufficient to establish that moving defendants should be held accountable for Galligan's alleged tortious conduct in Delaware by virtue of the relationship that existed between moving defendants and Galligan.  Plaintiff has failed to do so.  Indeed, plaintiff alleges that Galligan was hired, employed and supervised by defendants Marist and Mount Saint

Michael's, not by moving defendants.  (D.I. 15 at 5; AC at ¶¶ 4, 6)  Even if the court

were to assume that Galligan was an agent of moving defendants, when an act is

offered as a basis for jurisdiction, Delaware law requires the act to have occurred within

the scope of the agent's (here, Galligan's) employment and the principal (here, moving

defendants) to have directed the act.  *See Computer People, Inc. v. Best Int'l Group,*

*Inc.*, Civ. No. 16648, 1999 WL 288119, at *8 (Del. Ch. April 27, 1999) ("Under agency

theory of personal jurisdiction, only acts of the agent that are directed by the principal

may serve as a basis to assert jurisdiction over the principal."); *Applied Biosystems*, 772

F. Supp. at 1465-66 (in applying Delaware's long-arm statute, the court may consider

actions of an agent to the extent they were directed and controlled by the principal).

Aside from plaintiff's conclusory statements in this regard, there are no facts asserted

which demonstrate that the moving defendants knew of, directed or authorized the

travel to and/or through Delaware, let alone the tortious conduct that allegedly was

committed by Galligan in Delaware.[4]

Finally, plaintiff asserts no facts suggesting that moving defendants purposefully

directed activities toward Delaware or otherwise engaged in conduct such that they

would reasonably have anticipated being haled into court in Delaware.  Therefore, the

exercise of personal jurisdiction over moving defendants would not comport with due

_____

[4]To the extent that plaintiff may be urging upon the court the theory that priests
are never "off duty" (i.e., that priests do not really have personal lives and, therefore, the
scope of their employment includes all of their conduct), that theory is rejected.  *See,*
*e.g., Tichenor v. Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994) (holding
that illicit sexual pursuits of priest were not related to duties of priest and did not further
any interests of the employer church); *Graham v. McGrath*, 363 F. Supp. 2d 1030,
1034-35 (S.D. Ill. 2005); *Tercero v. Roman Catholic Diocese of Norwich*, 48 P.3d 50, 58
(N.M. 2002).

process. *See*, *e.g.*, *Doe v. Roman Catholic Diocese of Boise, Inc.*, 918 P.2d 17, 23 (N.M. App. 1996) (acts of diocese, not acts of priest, must be considered when deciding if diocese has purposefully availed itself of the protections of forum state's laws or if it could reasonably anticipate being haled into court in the forum state); *Tercero*, 48 P.3d at 59.

### B. Statute of Limitations

Moving defendants alternatively request dismissal of plaintiff's claims, pursuant to Fed. R. Civ. P. 12(b)(6), as time-barred under the New York statute of limitations. N.Y. C.P.L.R. §§ 213, 214. New York's statute of limitations requires contract actions to be filed within six years,[5] and personal injury actions to be filed within three years.[6] Plaintiff's claims are barred under New York law since the alleged acts stopped occurring in 1983.

In contrast, plaintiff urges the court to apply the Delaware statute of limitations. The Delaware Child Victim's Act of 2007 ("the Act") allows any victim of child sexual abuse that occurred in Delaware to file suit for a two-year period beginning July 2, 2007, pursuant to the "look back" provision of the Act, which provides in part:

> A cause of action based upon the sexual abuse of a minor child by an adult may be filed in the Superior Court of this State at any time following the commission of the act or acts that constituted the sexual abuse. A civil

---

[5]"The following actions must be commenced within six years . . . [a]n action upon a contractual obligation or liability, express or implied . . ." N.Y. C.P.L.R. § 213(2).

[6]"The following actions must be commenced within three years . . . [a]n action to recover damages for a personal injury . . ." N.Y. C.P.L.R. § 214(5).

cause of action for sexual abuse of a minor shall be based upon sexual
acts that would constitute a criminal offense under the Delaware Code.

10 Del. C. § 8145(a).  The Act retrospectively creates a two-year window within which

claims may be brought for past child abuse actions which had been previously barred

by the prior statute of limitations.  10 Del. C. § 8145(b).

The court must determine which state's statute of limitations applies in order to

determine whether plaintiff has stated a claim upon which relief can be granted pursuant

to Fed. R. Civ. P. 12(b)(6).  "A Federal Court sitting in diversity in Delaware must apply

Delaware conflict of law rules in determining what state law will govern." *Dymond v.*

*NBC, Inc.,* 559 F. Supp. 734, 735 (D. Del. 1983).  The Delaware Supreme Court has

"adopted the Restatement of Conflicts 'most significant relationship' test for Delaware."

*Turner v. Lipschultz,* 619 A.2d 912, 914-15 (Del. 1992).  *See also Travelers Indem. Co.*

*v. Lake,* 594 A.2d 38 (Del. 1991) ("*Lake*").  As a result, in Delaware, "the local law of the

state which 'has the most significant relationship to the occurrence and the parties

under the principles states in § 6 [of the Restatement (Second) of Conflicts]' will govern

the rights of litigants in a tort suit." *Lake,* 594 A.2d at 47 (quoting Restatement (Second)

of Conflicts § 145(1)) (hereinafter, "the Restatement").

The "most significant relationship" test is derived from §§ 6 and 145 of the

Restatement.  Section 145 directs the court to evaluate the specific contacts of record[7]

---

[7]Pursuant to § 145(2) of the Restatement, courts should consider:
(a)  the place where the injury occurred;
(b)  the place where the conduct causing the injury occurred;
(c)  the domicil[e], residence, nationality, place of incorporation and place of
business of the parties; and
(d) the place where the relationship, if any, between the parties is centered.

consistent with the issues in dispute and within the broader policy context described in §

6 of the Restatement.[8]  The default rule in a personal injury case, according to the

Delaware Supreme Court, is to "apply the law of the state where the injury occurred;"

the forum state's laws should control only if "the forum state has [a] more 'significant

relationship' under the Section Six principles to the 'occurrence and the parties.'"  *Id.*

(quoting Restatement § 146).  In this regard, although the location of a plaintiff's injury is

entitled to much weight, the Restatement also recognizes that

> situations do arise . . . where the place of injury will not play an important
> role in the selection of the state of the applicable law.  This will be so, for
> example, when the place of injury can be said to be fortuitous or when for
> other reasons it bears little relation to the occurrence and the parties with
> respect to the particular issue.

Restatement § 145 cmt. e (citing § 146 cmts. d-e).  *Accord Rasmussen v. Uniroyal*

*Goodrich Tire Co.*, No. 93C-04-058, 1995 WL 945556, at *2 (Del. Super. Aug. 18,

1995).

Consistent with the factors identified above, New York has the most significant

relationship to the parties.  Plaintiff's relationship with Galligan arose out of interactions

that originated in New York.  The alleged legal relationships between Galligan and

---

[8]Section 6 lists the following choice of law considerations:
(a)  the needs of the interstate and international systems;
(b)  the relevant policies of the forum;
(c)  the relevant policies of other interested states and the relative interests of
those states in the determination of the particular issue;
(d)  the protection of justified expectations;
(e)  the basic policies underlying the particular field of law;
(f)  certainty, predictability and uniformity of result; and
(g)  ease in the determination and application of the law to be applied.

moving defendants are centered in New York. Neither of the trips of record were related to plaintiff's employment. (*See* footnote 4 *supra*) The fact that plaintiff's injuries allegedly took place in Delaware is fortuitous, especially the alleged use of a rest stop while traveling through Delaware. *See Whitwell v. Archmere Acad., Inc.*, 463 F. Supp. 2d 482 (D. Del. 2006) (finding that the place of injury was fortuitous, the court applied the law of the state where the legal relationships between plaintiff and defendants were centered). Although the Delaware legislature has expressed, through passage of the Act, a policy to compensate children for past sexual abuse, there is no indication that the scope of the Act should encompass the conduct as alleged, involving a non-Delaware victim, non-Delaware defendants, and transient, isolated Delaware activities.

## V. CONCLUSION

For the reasons stated, the motion to dismiss filed by defendants the Archdiocese and the Church of the Nativity (D.I. 10) is granted. Their related motion to stay discovery pending disposition of the motion to dismiss (D.I. 12) is denied as moot. An appropriate order shall issue.