IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN ELLIOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 09-611-SLR |
| ) | |
| THE MARIST BROTHERS OF THE ) | |
| SCHOOLS, INC., THE ARCHDIOCESE ) | |
| OF NEW YORK, CHURCH OF THE ) | |
| NATIVITY OF OUR BLESSED LADY, ) | |
| MT. ST. MICHAEL'S SCHOOL and ) | |
| BROTHER DAMIAN GALLIGAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 21st day of September 2010, having considered Marist and Mount Saint Michael's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), and the papers submitted in connection therewith;

IT IS ORDERED that said motion (D.I. 52) is granted, as follows.

1. **Background**. The court has previously detailed the relevant facts in its December, 2009 memorandum opinion. (D.I. 35; *Elliott*, 675 F. Supp. 2d 454) The court incorporates those facts herein by reference, and limits its current discussion to those facts most relevant to the motion for judgment on the pleadings, as follows.

2. Plaintiff Brian Elliott ("plaintiff") is a resident of the State of New Jersey. (D.I. 1, ex. A at ¶ 2) Plaintiff brought his suit against the Marist Brothers of the Schools Inc. ("Marist"), the Archdiocese of New York ("the Archdiocese"), Church of the Nativity of Our Blessed Lady ("Church of the Nativity"), Mount Saint Michael's School ("Mount

Saint Michael's"), and Brother Damian Galligan ("Galligan") (collectively "defendants"), seeking monetary damages for personal injuries arising from alleged childhood sexual abuse by Galligan. (D.I. 1, ex. A at ¶ 1)

3. Mount Saint Michael's is incorporated in the State of New York as a private religious high school and is located at 4300 Murdock Ave., Bronx, New York. (*Id.* at ¶ 5) The Archdiocese is authorized to conduct business in the State of New York as a Roman Catholic religious enterprise and governing organization of the Catholic Church, and is located at 1011 First Ave., New York. (*Id.* at ¶ 9)

4. Marist is incorporated in the State of New York and is a religious order of brothers, with a registered agent at Archbishop Malloy High School, 83-53 Manton St., Jamaica, New York. (*Id.* at ¶ 3) Marist was responsible for hiring and supervising Galligan as its employee and agent. (*Id.* at ¶ 4) Marist served mass at the Church of the Nativity, a parish under the Archdiocese. (*Id.* at ¶ 27)

5. The Church of the Nativity is located at 1523 East 233rd St., Bronx, New York, and is authorized to conduct business in the State of New York as a private religious institution, operating a church. (*Id.* at ¶ 10) The Church is a parish under the Cardinal of the Archdiocese and its hierarchy. (*Id.*)

6. Galligan was a brother of the Marist order and was employed by the Archdiocese and Marist as an active brother. (*Id.* at ¶ 11) Galligan also taught at Mount Saint Michael's and served at the Church of the Nativity. (*Id.*)

7. Plaintiff is forty years old and, at the time of the alleged sexual abuse, he ranged from ages eight to thirteen. (*Id.*) Beginning in the fall of 1977, when plaintiff was eight years old, Galligan allegedly began to sexually assault, abuse, rape and/or

molest plaintiff. (*Id.* at ¶ 32) These acts of sexual abuse and assault allegedly occurred on a regular basis between 1977 and 1983 in various locations in New York, New Jersey and Delaware. (*Id.* at ¶ 33) More specifically, plaintiff alleges that Galligan abused him in 1979 during an overnight trip to Rehoboth Beach, Delaware and on two occasions in 1979 and 1981 at a Delaware rest stop. (*Id.* at ¶¶ 33-37)

8. This case was filed in the Superior Court of the State of Delaware following enactment of the Delaware Child Victim's Act of 2007, 10 Del. C. § 8145, in which legislation opened a window of opportunity for litigants to assert claims involving alleged sexual abuse of children that occurred decades ago and otherwise would have been barred by Delaware's statute of limitations.[1] The case at bar does not involve citizens of Delaware; rather, they involve alleged instances of sexual abuse of a non-resident child by a non-resident priest during visits to Delaware.

9. In lieu of an answer, the Archdiocese and Church of the Nativity filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim based on the statute of limitations. (D.I. 11 at 2) Their principal arguments were that the court: (1) lacks personal jurisdiction over defendants; and (2) should apply New York law to the dispute and, thus, dismiss the suit because the claims are barred by the applicable statute of limitations. On December 21, 2009, the court determined that, pursuant to the "most significant relationship test," New York has the most significant relationship to the parties and, therefore, New York's three-year statute of limitations barred plaintiff's

---

[1] The above captioned cases were removed to this court pursuant to 28 U.S.C. §§ 1441 and 1446.

claims for compensation for abuse allegedly occurring between 1977 and 1983 (D.I. 1 at ¶ 33). *Elliott v. The Marist Bros. of the Schools, Inc.*, 675 F. Supp. 2d 454, 461 (D. Del. 2009); *see also* N.Y. C.P.L.R. § 214(5) ("The following actions must be commenced within three years . . . [a]n action to recover damages for a personal injury[.]").[2]

10. Neither Marist nor Mount Saint Michael's challenged jurisdiction in lieu of answering the complaint.[3] On February 17, 2010, Marist and Mount Saint Michael's filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.I. 52) That motion is currently before the court, as are two discovery motions related to these defendants. (D.I. 54, 58)[4] The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

11. **Standard**. A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The court must accept all factual allegations in a

---

[2] Plaintiff filed a motion for reconsideration, which was denied by the court on August 26, 2010. (D.I. 42, 70)

[3] In his answering papers, plaintiff argues that this court has "conspiracy jurisdiction" over the moving defendants due to their knowing and voluntary participation in a scheme to cover up Galligan's sexual abuse of children. (D.I. 56 at 9-10) (citations omitted) Plaintiff seeks discovery to buttress its claims.

[4] Plaintiff moves for an order compelling Marist to respond to written discovery requests served in December 2009. (D.I. 54) Marist has moved for a protective order relating to two depositions that were then-scheduled for March 2010. (D.I. 58) To the extent not moot, both motions will be denied in view of the court's dismissal of the claims against Marist.

The court will address Galligan's motion for a protective order (D.I. 47) by separate opinion.

complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed.R.Civ.P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

12. **Discussion.** Delaware and New York law differ with respect to their respective statutes of limitations for personal injury claims arising from childhood sexual abuse. As noted previously, in the context of the Archdiocese and Church of the Nativity's motion to dismiss, the court stated that "New York has the most significant relationship to the parties." *Elliott*, 675 F. Supp. 2d at 461. The parties dispute whether the law-of-the-case doctrine bars a contrary result here. Specifically, plaintiff argues

that an October 5, 2009 bench ruling by President Judge Vaughn of the Delaware Superior Court presents a "change in controlling law" that should be considered by the court. (D.I. 56 at 22)

13. Although the court agrees that the law-of-the-case doctrine "does not restrict a court's power, but rather governs its exercise of discretion," *Doe v. Indian River School District*, — F. Supp. 2d —, 2010 WL 623530 at *6 (D. Del. 2006) (citation omitted), the court applies the doctrine for several pragmatic reasons. Its prior decision in this action post-dates President Judge Vaughn's opinion. As such, "the evidence at the two stages of litigation is substantially similar," consisting still of the allegations of the amended complaint. *See id.* (quoting *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003) (internal quotations omitted)). As explained previously, those allegations demonstrate that New York has the most significant relationship to the parties.[5] The court, therefore, need not conduct another conflict of law analysis under Delaware's "most significant relationship" test to determine which law governs the instant litigation.[6]

---

[5]Specifically: (1) the abuse by Galligan developed while plaintiff was visiting his grandmother in the Bronx, New York and while plaintiff was living in New York (D.I. 1 at ¶¶ 26-29); (2) both Marist and Mount Saint Michael's are incorporated in New York (*id.* at ¶¶ 2, 5); and (3) there are no allegations that either moving defendant has ever had any presence in Delaware. The only connection to Delaware alleged in this case is that Galligan abused plaintiff in Delaware on two occasions and, as explained previously, "[t]he fact that plaintiff's injuries allegedly took place in Delaware is fortuitous" and bears little (if any) relation to the occurrence and to the parties. *See Elliott*, 675 F. Supp. 2d at 641.

[6]The "most significant relationship" test is derived from §§ 6 and 145 of the Restatement (Second) of Conflict of Laws ("the Restatement").
Pursuant to § 145(2) of the Restatement, courts should consider:

(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;

See *Whitwell v. Archmere Academy, Inc.*, 463 F. Supp. 2d 482, 485 (D. Del. 2006).

14. The court notes in closing plaintiff's continuing argument that the Delaware legislature, as interpreted by President Judge Vaughn, has sanctioned bringing suits such as the one at bar in Delaware if only one act of abuse occurred within this state.[7] The context of President Judge Vaughn's bench ruling is not of record. As plaintiff states, there had been "extensive briefing on numerous motions for summary judgment filed by numerous institutional defendants" at the time the Judge went on the record to address the scope of newly-amended 10 Del. C. § 8145 (hereinafter, the Child Victim's Act or "CVA"). (D.I. 56 at 16) The CVA does not contain a choice of law provision, and

---

> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and
> (d) the place where the relationship, if any, between the parties is centered.

Section 6 lists the following choice of law considerations:

> (a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular field of law;
> (f) certainty, predictability and uniformity of result; and
> (g) ease in the determination and application of the law to be applied.

[7]President Judge Vaughn held that "if a person is a victim of child sexual abuse that occurred in [Delaware,] the lifting of the bar of the civil statute of limitations applies to all of that victim's claims, all claims which were previously barred, whether they occurred in this state or without this state. Therefore, if a person was subjected to **one** sexual act of criminal abuse in this state, he may file suit against his abuser as to **all** acts of sexual abuse, **both the one or ones that occurred in Delaware and ones that occurred in other jurisdictions**." *Dingle v. Catholic Diocese of Wilmington,* Civ. No. 07C-09-025 (Del. Super. October 5, 2009) (emphasis added) (of record at D.I. 56, tab A) (addressing 10 Del. C. § 8145(b)).

6

it would be within the sole purview of the legislature to exclude the CVA from a traditional choice of law analysis.

15. The Restatement, e.g., §§ 145(6)(b) and (c), permits the court to consider Delaware's interest in the court's choice of law analysis. It is the court's opinion that Delaware's interest in allowing such suits, under the circumstances at bar,[8] is outweighed by the defendants' relationships to New York. Marist and Mount Saint Michael's motion for judgment on the pleadings, therefore, is granted.

IT IS FURTHER ORDERED that:

16. Plaintiff's motion to compel with respect to Marist (D.I. 54) is denied as moot.

17. Marist's motion for a protective order (D.I. 58) is denied as moot.

_____
United States District Judge

---

[8] See Elliott, 675 F. Supp. 2d at 461 ("[T]here is no indication that the scope of [10 Del. C. § 8145] should encompass the conduct as alleged, involving a non-Delaware victim, non-Delaware defendants, and transient, isolated Delaware activities.").